UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MOSSY CREEK MINING, LLC, )
      Plaintiff, )
)
v. ) No. 3:10-CV-328
) (Phillips/Shirley)
NYRSTAR IDB, LLC, NYRSTAR TENN. )
MINES-STRAWBERRY PLAINS, LLC, )
and NYRSTAR NV, )
      Defendants. )

**MEMORANDUM OPINION**

**I.      Introduction**

This matter is before the court pursuant to the motions of Defendant Nyrstar Tennessee Mines-Strawberry Plains, LLC [Doc. 6, 17] and Defendants Nyrstar IDB and Nyrstar NV [Docs. 8, 19] to dismiss the Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to compel arbitration and stay the proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. For the reasons contained herein, this court finds that the valid arbitration provisions between the parties mandate that this action be transferred to the Northern District of Illinois.

**II.     Background**

      **1.      Statement of the Facts**

This case concerns property damage and tortious acts allegedly committed by Defendants Nyrstar IDB, LLC ("Nyrstar IDB"), Nyrstar Tennessee Mines-Strawberry Plains, LLC ("Strawberry Plains"), and Nyrstar NV against Plaintiff Mossy Creek Mining, LLC.

Plaintiff is a Tennessee limited liability company that sells agricultural products, including agricultural lime and limestone products, in Jefferson County, Tennessee. Nyrstar IDB and Strawberry Plains are Delaware limited liability companies that transact business in Jefferson County, Tennessee. Nyrstar NV is a Belgian corporation that operates zinc mines around the world, including the ASARCO Young Mine in Jefferson County, Tennessee.

On October 24, 2002, Plaintiff purchased the rights to any and all stockpiled limestone tailings located at the ASARCO Young Mine ("Young Mine"). (Doc. 13, Attach. 1.) Plaintiff and ASARCO executed the Young Mine Tailings and Access Easement Agreement ("Original Easement Agreement"), which granted Plaintiff the right to remove tailings from Young Mine and to use certain roads, buildings, and equipment at Young Mine for the purpose of removing the tailings. (Doc. 13, Attach. 2, ¶¶ 2-3.) The agreement also contained the following mandatory arbitration clause:

> Arbitration. Any dispute arising out of or relating to this Easement Agreement, including without limitation, the breach, termination or validity thereof, which has not been resolved by a non-binding procedure . . . will be settled by binding arbitration pursuant to the Commercial Arbitration Rules of the AAA, as in effect on the date thereof. The arbitration will be conducted in Knoxville, Tennessee, by a single arbitrator agreed upon by the parties, or, if the parties cannot agree upon the selection of an arbitrator, selected by AAA in accordance with AAA procedures. The arbitrator will be governed by, and apply the substantive law of the State of Tennessee, in making the award, and the decision of the arbitrator thereon will be final and binding upon the parties.

Id. ¶ 14(c). Subsequently, ASARCO filed for bankruptcy.

Glencore, Ltd., a Swiss corporation, bought the right to purchase ASARCO's assets, and Plaintiff entered an agreement with Glencore on May 19, 2006 (Doc. 13, Attach. 3). Under this "Young Mine Agreement," Glencore assigned to Plaintiff all of the agricultural lime, sand, and tailings that would be produced during Glencore's operations at Young Mine. Id. ¶ 4.

2

The Young Mine Agreement provided that Glencore could assign its interests to one of its affiliates if said affiliate assumed Glencore's obligations under the terms of the agreement. Id. ¶ 6. It also provided that, in the event the right to purchase the property was assigned to the Industrial Development Board of Jefferson County, Tennessee, and then leased to Glencore or its affiliate, Glencore or its affiliate would likewise be bound by the agreement. Id. With the exception of assignments to Glencore's affiliates, Glencore's successor, or the Industrial Development Board, Glencore could not assign the agreement, or any interest therein, without Plaintiff's written consent. Id. at 4-5. Finally, the Young Mine Agreement contained the following arbitration provision:

> Resolution of Disputes. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The place of arbitration shall be Chicago, Illinois.

Id. ¶ 8(m). The parties provided that the Young Mine Agreement would prevail in case of any inconsistencies with the Original Easement Agreement, id. ¶ 7, so to the extent that they were inconsistent, this arbitration provision revised that of the Original Easement Agreement.

As contemplated in the Young Mine Agreement, Glencore assigned its rights to purchase the ASARCO assets, including the Young Mine, to the Industrial Development Board. The Industrial Development Board purchased the assets using funds generated by the issuance of a revenue bond. Glencore IDB, LLC purchased the revenue bond, and as security for the bond, the Industrial Development Board granted Glencore a deed of trust. As permitted by the Young Mine Agreement, the Industrial Development Board leased the interests in Young Mine to East Tennessee Zinc Company, LLC, a Glencore affiliate. (Doc. 13, Attach. 4.)

On June 11, 2007, the Industrial Development Board, East Tennessee Zinc, and the Plaintiff entered into a "Supplemental Easement Agreement," which adopted and modified the previous easement agreements. (Doc. 13, Attach. 5.) The Supplemental Easement Agreement provided that Plaintiff would continue to own all tailings in existence at the Young Mine and, upon deposit, new tailings would also become the Plaintiff's property. Id. ¶ 1. In return, Plaintiff would "accommodate East Tennessee Zinc so that East Tennessee Zinc can maximize the space to put new tailings on the tailings dam and to avoid contamination of the old tailings, . . . ." Id. ¶ 1. The agreement specified that East Tennessee Zinc would be responsible "for completion of all repairs to and management of the tailing dam and the tailings pond." Id. ¶ 3.

In the Supplemental Easement Agreement, East Tennessee Zinc assumed, and the Plaintiff agreed to, all terms of the Original Easement Agreement that were consistent with and not expressly modified in the supplemental agreement:

> Entire Easement Agreement. The Original Easement Agreement, together with the Exhibits thereto, as supplemented by this Supplemental Easement Agreement, constitutes the entire Easement Agreement. In the event any terms and conditions contained in this Supplemental Easement Agreement conflict or are inconsistent with any terms or conditions in the Original Easement Agreement . . . the terms of this Supplemental Easement Agreement shall control. In the event any terms and conditions contained in the Original Easement Agreement, as supplemented by this Supplemental Easement Agreement, conflict or are inconsistent with any terms and conditions in the Young Mine Agreement, . . . the terms of the Young Mine Agreement . . . shall control.

Id. ¶ 15(e). It also provided that "[w]henever the term 'ASARCO' is contained in the Original Easement Agreement, as the context requires, such terms shall be deemed from and after the closing date to mean 'East Tennessee Zinc and its affiliates.'" Id. ¶ 12(a). The Supplemental Easement Agreement contained no provision revising or relating to the existing arbitration agreements between the parties.

4

In December 2009, Nyrstar NV purchased all membership interests in East Tennessee Zinc from Glencore. (Doc. 18, Ex. 1, ¶ 2; Ex. 2, ¶ 3.) As part of that transaction, Glencore assigned its rights and obligations in the aforementioned deed of trust, security agreement, and lease to Nyrstar NV. East Tennessee Zinc subsequently filed an Application for Amended Certificate of Authority with the Secretary of State to change its name to "Nyrstar Tennessee Mines-Strawberry Plains, LLC." (Doc. 18, Ex. 2, Attach. A.) Strawberry Plains continued operating the Young Mine pursuant to East Tennessee Zinc's lease.

Plaintiff contends that, in the tailings storage process at Young Mine, Defendants Nyrstar NV, Nyrstar IDB, and Strawberry Plains contaminated their tailings with rock, dirt, and other substances. (Doc. 13, ¶ 59.) These tailings were then placed on Plaintiff's property during the mining process, thus contaminating Plaintiff's lime resources. Id. ¶ 65. Plaintiff also contends that Defendants failed to properly maintain their dikes and dams, and in so doing allowed water and rain to wash further contaminates on to Plaintiff's property. Id. ¶ 66. Said contamination allegedly rendered portions of Plaintiff's lime unmarketable, added significant expense by requiring Plaintiff to filter the lime, and slowed the Plaintiff's production process. Id. ¶¶ 60-63.

2. **Statement of the Case**

On July 24, 2008, prior to Nyrstar NV's acquisition of East Tennessee Zinc Company, LLC, and prior to East Tennessee Zinc's name change to "Nyrstar Tennessee Mines-Strawberry Plains," Plaintiff initiated a lawsuit against East Tennessee Zinc in the Chancery Court for Jefferson County, Tennessee, raising many of the same issues as those raised in the instant action. The suit was voluntarily dismissed after East Tennessee Zinc filed a Demand for

Arbitration in Chicago, Illinois. Arbitration between the Plaintiff and East Tennessee Zinc is currently pending in the Northern District of Illinois.

On August 29, 2010, Plaintiff initiated the instant lawsuit, alleging that the acts and omissions of Defendants Nyrstar NV, Nyrstar IDB, and Strawberry Plains caused contamination of and substantial injury and damage to the Plaintiff's property. (Doc. 1.) Plaintiff's First Amended Complaint includes actions against the Defendants for negligence, gross negligence, nuisance, trespass, and conversion. (Doc. 13, ¶¶ 69-118.) Plaintiff seeks compensatory damages in excess of six million dollars. Id.

On September 30, 2010, Strawberry Plains filed a Motion to Dismiss, or Alternatively, to Compel Arbitration and to Stay the Proceedings Pending Arbitration (Doc. 6). Nyrstar IDB and Nyrstar NV filed a joint motion requesting the same (Doc. 8). After Plaintiff filed its First Amended Complaint on October 21, 2010, Defendants filed new motions requesting the same relief. (Docs. 17, 19.)

### III. Jurisdiction and Venue

Plaintiff is a Tennessee limited liability company. Defendants Nyrstar IDB and Strawberry Plains are Delaware limited liability companies, and Defendant Nyrstar NV is a Belgian corporation with its principal office in Balen, Belgium. Plaintiff seeks compensatory damages in excess of $6 million. (Doc. 13, ¶¶ 69-118.) This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (West 2011), as the parties are residents of different states, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

This matter concerns property damage and tortious acts that occurred in Jefferson County, Tennessee. Absent an agreement otherwise between the parties, venue is proper because a substantial part of the events giving rise to this cause of action occurred, and the property that was damaged is situated, in this district. 28 U.S.C. § 1391. However, because this court finds that the parties entered into a contract containing a valid forum selection clause, this district is not the proper venue, and this action will be transferred to the Northern District of Illinois.

## IV.    Analysis

The Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce[1] to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2 (West 2011). Where there is a valid contract and the dispute falls within the scope of the agreement, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Under the FAA, a court undertakes four tasks when reviewing an arbitration provision: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of the agreement; (3) if federal statutory claims are asserted, determine whether Congress intended them to be non-arbitrable; and (4) if some, but not all of the claims are subject to arbitration, determine whether to stay the remainder of the proceedings pending arbitration. Fazio v. Lehman Bros., Inc., 340 F.3d 386, 395 (6th Cir. 2003) This court finds that Plaintiff entered into a valid arbitration agreement with Strawberry Plains, that Plaintiff's claims fall within the scope of that agreement, and that the Plaintiff's claims against the three Defendants are sufficiently similar and interdependent as to justify transferring the entire action to the appropriate venue for arbitration.

> 1. **Defendant Strawberry Plains assumed the rights and obligations contained in its successors' prior written agreements, and therefore is bound by and may assert rights pursuant to the arbitration agreement.**

---

[1] Because of the strong policy favoring arbitration, the requirement of "evidencing a transaction involving commerce" is given a broad interpretation and is "the functional equivalent of 'affecting'" interstate commerce. Brubaker v. Barrett, 2011 U.S. Dist. LEXIS 77187, *13-14 n.10 (E.D. Tenn. July 15, 2011) (citing Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 273-74 (1995)). The instant case concerns the transfer of assets between a Tennessee limited liability company and a Delaware limited liability company, and the rights and obligations of several contractual agreements between parties of different states and foreign countries. The FAA plainly controls the arbitration provisions in dispute in this case.

Plaintiff asserts that it did not agree to arbitrate any claims with Strawberry Plains because Strawberry Plains is neither a "successor" nor a "permitted assign" of the rights and obligations contained in the Young Mine Agreement. A "successor" is a "corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." Black's Law Dictionary (9th ed. 2009). The court cannot find any case law bolstering Plaintiff's argument that the definition of "successor" precludes limited liability companies because it refers to a "corporation." In determining whether one company is a successor of another, this court applies state law. IBC Mfg. Co. V. Velsicol Chemical Corp., 187 F.3d 635 (6th Cir. 1999). Under Tennessee law, a company that purchases all or some of the assets of another company generally becomes a successor for purposes of liability and benefits if: (1) the purchasing company expressly or implicitly agrees to assume the liabilities and benefits; (2) the transaction amounts to a consolidation or merger of the two companies; (3) the purchasing company is a mere continuation of the selling company; or (4) the transaction is entered into fraudulently, in order to escape liability for the obligations of the selling corporation. Signature Combs, Inc. v, United States, 331 F. Supp. 2d 630, 640 (W.D. Tenn. 2004) (citing City Mgmt. Corp. v. U.S. Chem. Co., 43 F.3d 244, 251 (6th Cir. 1994).

This court finds that Strawberry Plains was a successor to Glencore's interests in Young Mine because it expressly assumed Glencore's rights and liabilities thereunder. The Young Mine Agreement provides "[t]his Agreement shall be binding on the parties hereto, their successors and permitted assigns . . . ." (Doc. 13, Attach 3, ¶ 6(a).) As permitted by the Young Mine Agreement, Glencore assigned the right to purchase the Young Mine to the Industrial Development Board, which in turn leased the rights to the property to East Tennessee Zinc, a

9

Glencore affiliate, as also permitted by the Young Mine Agreement. In its Supplemental Easement Agreement with the Plaintiff, East Tennessee Zinc assumed the obligations of the Young Mine Agreement.

Nyrstar NV then purchased "all of the issued and outstanding membership interests" of East Tennessee Zinc. (Doc. 7, Attach. 1, at 7.) East Tennessee Zinc did not file new incorporation documents upon its transfer to Nyrstar; rather, it merely changed its name to Nyrstar Tennessee Mines-Strawberry Plains. The Membership Interest Purchase Agreement between Nyrstar and East Tennessee Zinc Company expressly indemnifies East Tennessee Zinc from any loss resulting from Nystar's "performance of obligations due after Closing upon contracts to which [East Tennessee Zinc] are parties, including the Mossy Creek Agreements." (Doc. 7, Attach. 1, at 23.) Thus, this purchase agreement vested Strawberry Plains with the rights and burdens of East Tennessee Zinc's contractual arrangements, and Strawberry Plains became a successor to Glencore's interests in Young Mine for purposes of the Young Mine Agreement's transfer restrictions. Because Strawberry Plains is a valid successor to Glencore (and Glencore's affiliate's) interests in Young Mine, it may assert rights under the arbitration provisions contained in Plaintiff's prior Original Easement Agreement and Young Mine Agreement.

2. **Plaintiff's tort claims against the Defendant Strawberry Plains are within the scope of the valid arbitration clauses in the Plaintiff's written agreements with ASARCO, Glencore, and East Tennessee Zinc.**

To determine whether a claim falls within the scope of an arbitration clause, a court should ask whether the arbitration clause is broad or narrow. Under the "positive assurance" test, there is a presumption that a broad arbitration clause should not be denied "unless it may be said with positive assurance that the clause does not cover the dispute." Zucker

v. After Six, Inc., 174 Fed. App'x 944, 946 (6th Cir. 2006) (citing Georgia Power Co. v. Cimarron Coal Corp., 526 F.2d 101, 106 (6th Cir. 1975)). The Sixth Circuit specifically looks to whether "an action could be maintained without reference to the contract or relationship [containing the arbitration clause]. If it could, it is likely outside the scope of the arbitration agreement." Fazio, 340 F.3d at 395; see also NCR Corp. V. Korola Assocs., Ltd., 512 F.3d 807, 814 (8th Cir. 2008). Given the "'federal policy favoring arbitration, . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Gordon v. Dadante, 294 Fed. App'x 235, 238 (6th Cir. 2008) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

Two of the Plaintiff's written agreements at issue in this case expressly require disputes between the parties to be resolved by arbitration, and the third agreement incorporates this arbitration requirement. The Original Easement Agreement mandates arbitration of "[a]ny dispute arising out of or relating to this Easement Agreement, including without limitation, the breach, termination, or validity thereof." (Doc. 13, Attach 2, ¶ 14(c).) The Young Mine Agreement provides, "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration . . . ." (Doc. 13, Attach. 3, ¶ 8(m).) Under the Supplemental Easement Agreement between East Tennessee Zinc and the Plaintiff, the parties agreed to all terms of the Original Easement Agreement and the Young Mine Agreement that were consistent with and not expressly modified in the supplemental agreement. (Doc. 13, Attach. 5, ¶ 15(e).) Plaintiff is mistaken that the "lack of an arbitration provision" or, alternatively, the "jury trial waiver provision" in the Supplemental Easement Agreement is in conflict with and takes precedent over the prior agreements' arbitration clauses. (Doc. 23, at 11.)

The Supplemental Easement Agreement contains no provisions that relate to or conflict with the arbitration clauses in the prior written agreements, and therefore binds the parties thereto.

To the extent that there is inconsistency in the scope of the arbitration clauses in the Original Easement Agreement and the Young Mine Agreement, the Young Mine Agreement controls. However, the two express clauses are similarly broad in scope: both provide for arbitration of disputes, cases, or controversies "arising out of or relating to" the parties' agreements. (Doc. 13, Attach 2, ¶ 14(c); Attach 3, ¶ 8(m)); see Verizon Adv. Data, Inc. v. Frognet, Inc., 2006 U.S. Dist. LEXIS 57223, *7-8 (S.D. Ohio Aug. 14, 2006) (noting that, for purposes of the "positive assurance" presumption, an arbitration clause containing the phrase "any claim or controversy" or "arising out of or relating to" is considered "the paradigm of a broad arbitration clause").

The provisions of the written agreements plainly extend to tort claims, like those at issue in this case, which concern the daily operations at Young Mine and the parties' rights to and obligations at the mine. Applying the Sixth Circuit test from Fazio, it is clear that the Plaintiff cannot maintain this action without repeated reference to the various agreements between the parties and their predecessors in interest (Doc. 13, ¶¶ 18, 19, 21-32, 37, 38, 40). Plaintiff cannot escape the arbitration clauses simply by bringing tort, instead of contract, claims.[2] The agreements "serve as the very foundation of the relationship between the parties . . . and define all of [Plaintiff's] rights with respect to the tailings at issue." (Doc. 18, at 15.) All of Plaintiff's claims concern Defendants' alleged interference with Plaintiff's rights on the Young

---

[2] "Merely casting a complaint in tort does not mean that the arbitration provision does not apply." Fazio, 340 F.3d at 395. "Even real torts can be covered by arbitration clauses if the allegations underlying the complaint touch matters covered by the agreement." Id.

Mine property—rights that arise out of the three agreements. Additionally, Plaintiff's negligence claims refer, albeit not expressly[3], to the Defendants' breach of their contractually assumed duties. Compare (Doc. 14, at ¶¶ 73-76), with (Doc. 13, Attach. 5, ¶¶ 1, 3.)

Finally, Plaintiff acknowledges that Strawberry Plains's mining operations at Young Mine were "subject to [the Young Mine Agreement's] provisions" at the time that the alleged tortious activity occurred. (Doc. 14, at 9.) In Plaintiff's own words:

> [Plaintiff] does not contend that [Strawberry Plains], as an operator of the Young Mine along with Nyrstar NV and Nyrstar IDM, LLC, is not bound by the terms and obligations of the [Young Mine Agreement], the Original Easement, or the Supplemental Easement Agreement. However, [Plaintiff] does contend, as explained in this memorandum, that it did not agree to arbitrate the claims set forth in the [First Amended Complaint] with [Strawberry Plains].

(Doc. 23, at 3 n.1.) In denying the enforceability of the arbitration clause, Plaintiff seeks to enforce only those contractual provisions that inure to Plaintiff's benefit. Defendants are correct in asserting that this court cannot allow Plaintiff to retain the benefits of its agreements, while discarding the obligations, such as the obligation to arbitrate disputes. (Doc. 18, at 15.) Though expressed as tort claims, Plaintiff's causes of action against the Defendant plainly arise out of and relate to the various easement agreements, and are therefore subject to those agreements' arbitration clauses.

> 3. **The Supplemental Easement Agreement incorporates the Young Mine Agreement's valid forum selection clause, so arbitration must take place in the Northern District of Illinois.**

---

[3] When amending its complaint, Plaintiff removed its allegation that "[i]n operating the Young Mine, Nyrstar is subject to the restrictions and obligations of the Young Mine Agreement, the Young Mine Tailings and Access Easement Agreement, and the Supplemental Easement Agreement." (Doc. 1, ¶ 31.)

The Federal Arbitration Act prohibits a district court from compelling parties to arbitrate outside of the district court's own district. 9 U.S.C. § 3; see also Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1018 (6th Cir. 2003) ("[W]here the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to § 4.") Therefore, where parties have entered into valid forum selection agreements, a district court outside of that forum must either dismiss the action or transfer venue under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, and in the interests of justice.

Federal courts uniformly hold that forum selection clauses that have been freely bargained for are *prima facie* valid and enforceable. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-94 (1991). In the Sixth Circuit, forum selection clauses are generally upheld unless they are unfair or unreasonable. Courts should look to the following test to determine whether a forum selection clause is unreasonable: (1) whether the clause was obtained by fraud, duress, abuse of economic power, or unconscionable means; (2) whether the designated forum would be closed to suit or would not effectively handle the suit; (3) whether the designated forum would be so seriously inconvenient that to require plaintiff to bring suit there would effectively deprive him of his day in court. Carnival Cruise Lines, 499 U.S. at 593-94. The party seeking to avoid a forum selection clause has the burden of showing that the clause is unreasonable. Id. When a forum selection clause is deemed unreasonable and as a result venue is determined to be improper, a court may either dismiss the case or transfer it to any other district in which it could have been brought. 28 U.S.C. § 1406(a). Finally, non-signatories to a contract

14

can be bound by or assert rights under a contractually forum selection clause if the non-signatories were "closely related" to the dispute and it is foreseeable they might be bound

The forum selection clause at issue in the instant case was agreed upon by the parties, and is therefore *prima facie* valid and enforceable. At the time they entered into the three agreements at issue in the instant case, Plaintiff and Defendants' predecessors were parties to a freely negotiated agreement. Both parties are sophisticated business entities whose officers negotiated the agreement at arm's length. To the extent that the arbitration clause contained in the Original Easement Agreement is inconsistent with that of the Young Mine Agreement, the Young Mine Agreement's terms prevail. Therefore, the Original Easement Agreement's selection of the state and federal courts of Tennessee as the exclusive jurisdiction for disputes arising out of or relating to the Original Easement Agreement is void as inconsistent with the Young Mine Agreement's selection of Chicago, Illinois as the designated place for arbitration.

There is no indication that the forum selection clause was entered into by means of fraud or duress, and there is no doubt that the Northern District of Chicago could effectively handle the suit; indeed, arbitration is currently pending there in Plaintiff's substantially similar suit against East Tennessee Zinc. Finally, while litigation in the Northern District of Illinois may cause some inconvenience for the parties, "mere inconvenience or additional expense" is not sufficient to show unreasonableness of a contractually selected forum. Plaintiff is already engaged in arbitration against Defendants' predecessor in interest in the Northern District of Illinois, so the burden of engaging in additional arbitration on the same or similar matters will be minimal. The pending arbitration with East Tennessee Zinc in Chicago also put both parties on

notice that their dispute could be transferred thereto. Thus, the forum selection clause between the parties is valid, and this case must be arbitrated in the Northern District of Illinois.

4. **Regardless of whether Defendants Nyrstar NV and Nyrstar IDB are legally accountable for the alleged torts, the interests of the parties, the public, and the judiciary mandate that Plaintiff's claims against all three Defendants be transferred to the Northern District of Illinois.**

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In balancing convenience, the court must consider a number of factors such as "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting Moses v. Bus. Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir. 1991)). "Ultimately ... the decision whether to transfer venue under § 1404(a) is committed to the sound discretion of the trial court." A.C. Strip v. Loge Group, LLC, 2010 WL 3292975, *2 (S.D. Ohio Aug. 19, 2010) (citing Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir.2009) ("As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate.")). The Sixth Circuit has recognized that the Court should consider forum selection clauses within the § 1404(a) balancing analysis. See Langley v. Prudential Mortg. Capital Co., LLC, 546 F.3d 365, 369 (6th Cir.2008) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).

Without reaching the question of whether Nyrstar IDB and Nyrstar NV had ownership of and control over operations at Young Mine, or whether Nyrstar IDB and Nyrstar

16

NV can assert rights under the various arbitration clauses, this court finds that the balancing of factors weighs in favor of transferring all of Plaintiff's claims to the Northern District of Illinois, primarily because the claims against Defendants are so similar and interrelated as to mandate the transfer of all arguably non-arbitrable claims in conjunction with the arbitrable claims.

While all of the events giving rise to this litigation occurred in the Eastern District of Tennessee, and many of the witnesses and much of the evidence will be located herein, the Court finds that the currently pending arbitration in the Northern District of Illinois surrounding the issues in dispute in this lawsuit indicates that the parties' interests will be best served by the transfer of this action. Plaintiff is already engaged in arbitration with East Tennessee Zinc in Chicago, Illinois, and will not be prejudiced by transfer of the remainder of its claims to that district. The transfer will also benefit Defendants, whose interests are similar to and intertwined with East Tennessee Zinc (now Strawberry Plains). Most, if not all, of the evidence in this case will already have been brought to the Northern District of Illinois during the pending arbitration.

Furthermore, transfer of this case upholds the parties' expectations that their arbitration provisions and forum selection clauses, as incorporated into the Supplemental Easement Agreement from the Young Mine Agreement and Original Easement Agreement, will be respected and given deference by the courts. These provisions, in conjunction with the pending arbitration against East Tennessee Zinc, put the parties on notice that they would be called to arbitrate in the Northern District of Illinois. The public interest is also served by the transfer of this action to the Northern District of Illinois. Deference to parties' choice of forum promotes contracting. Furthermore, transfer of this entire action to the forum selected for arbitration saves time and promotes judicial efficiency, which ultimately benefits the public.

It is clear that the interests of justice weigh also against Nyrstar NV and Nyrstar IDB proceeding with litigation pending Plaintiff's arbitration in the Northern District of Illinois with East Tennessee Zinc and Strawberry Plains. The arbitrable claims, namely those that arise out of or relate to the Plaintiff's agreements with ASARCO, Glencore, and East Tennessee Zinc (subsequently Strawberry Plains), predominate over the potentially non-arbitrable claims against Nyrstar NV and Nyrstar IDB. Arbitration will clarify the parties' rights and duties under these agreements, and resolve issues material to and determinative in Plaintiff's case against Nyrstar NV and Nyrstar IDM, since it will consider all of Strawberry Plains's arguably negligent and intentional acts and omissions at Young Mine, whether taken independently or by the direction of its parent company. Permitting Plaintiff to proceed against Nyrstar NV and Nyrstar IDB concurrently with its arbitration with East Tennessee Mines and Strawberry Plains could lead to inconsistent rulings, thus constituting a waste of judicial time and resources.

The court is unpersuaded by Plaintiff's argument that its claims against Nyrstar NV and Nyrstar IDB could be maintained independent of the action against Strawberry Plains. (Doc. 22, at 20). The instant case does not concern a few "common issues of fact," id.; rather, it concerns the exact same facts and alleges the exact same causes of action against all three of the Defendants. Most, if not all, of Nyrstar NV and Nyrstar IDB's potential liability is derivative of the liability of Strawberry Plains, and all of Plaintiff's claims against Nyrstar IDB and Nyrstar NV require proof that Strawberry Plains engaged in certain acts and committed certain omissions at Young Mine. While Plaintiff sets forth some proof regarding Nyrstar NV's control of operations at Young Mine, Plaintiff fails to point to any act, decision, or omission giving credence to its allegation that the three Defendants separately and independently contaminated

18

and damaged Plaintiff's property. (Doc. 13, ¶¶ 55-56, 65.) In fact, Plaintiff expressly discounts the acts and omissions of Nyrstar NV: "Under the direction and control of Nyrstar NV, [Strawberry Plains] and Nyrstar IDB took actions and omitted actions that resulted in contamination and damage . . . ." Id. ¶ 56. Even more compelling proof of the interdependence of Plaintiff's claims against the several Defendants is the complaint's treatment of Nyrstar IDB, which is not alleged to have taken a single independent act or omission and is only mentioned in conjunction with Nyrstar NV and Strawberry Plains. Id. ¶ 1-118. The court cannot permit Plaintiff to evade its arbitration commitments by bringing its claims up the corporate chain.

## V.     Conclusion

Defendant Strawberry Plains may compel arbitration under the Young Mine Agreement, as incorporated by the Supplemental Easement Agreement, and the tort claims in the instant action arise from and are related to the parties' rights and duties under those agreements. Additionally, the parties agreed to arbitrate their claims in the Northern District of Illinois, and this court finds that the interests of the parties, the public, and the judiciary mandate transfer of this entire action thereto.

**ENTER:**

_____s/ Thomas W. Phillips_____
United States District Judge